UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

UNITED STATES OF AMERICA

                -against-

JUAN SOLANO

                Defendant.

------------------------------------------------------------------------ x

**MEMORANDUM & ORDER**

16-CR-00535 (LDH)

LaSHANN DeARCY HALL, United States District Judge:

      Defendant Juan Solano was charged in a superseding indictment, dated August 2, 2017, with two counts. Count One charged Solano with participating in a conspiracy to distribute and possess with the intent to distribute five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, contrary to 21 U.S.C. § 841(a)(1). Count Two charged Solano with attempting to distribute and possess with the intent to distribute five kilograms or more of a substance containing cocaine. The indictment also included a criminal forfeiture allegation. On August 8, 2017, Solano pleaded not guilty as to both counts.

      The Court held a jury trial commencing on November 13, 2017. At the close of the Government's case, Defendant Solano moved for a judgment of acquittal. The motion was denied. On November 17, 2017, the jury returned a verdict of not guilty on Count One and guilty on Count Two of the Superseding Indictment.

      Defendant Solano moves, pursuant to Federal Rule of Criminal Procedure 29(b), for a judgment of acquittal, or in the alternative, a new trial pursuant to Rule 33(a). (*See* Mot. J. Acquittal, ECF No. 70.)

# BACKGROUND[1]

## I. Prior Bad Acts[2]

On July 9, 2014, Customs and Border Protection ("CBP") agents at a warehouse in Elizabeth, New Jersey discovered cocaine hidden inside of a shipping container, which was designated to contain plantains. (Tr. 222–26.) Upon the discovery, the CBP agents removed the cocaine from the container and placed it under surveillance. (Tr. 226.) The next day, on July 10, 2014, Solano, a truck driver by trade, was observed retrieving the container by Homeland Security Investigations Special Agent Brian Dalrymple. (Tr. 227–28.) Subsequently, Special Agent Dalrymple conducted an interview of Solano. (Tr. 228.) Solano was not arrested. (*Id.*) At the conclusion of the interview, Special Agent Dalrymple provided Solano with his phone number. (Tr. 221–22.)

On January 7, 2016, CBP agents, at Red Hook Terminal in Brooklyn, New York discovered cocaine and heroin inside of a shipping container. (Tr. 299–303, 312, 313.) As with the July 2014 container, the manifest indicated that the container held produce. (*Id.*) Again, CBP agents removed the cocaine from the container and placed it under surveillance. (Tr. 302–04.) Four days later, on January 11, 2016, Solano retrieved the container and drove it to a

---

[1] The facts are taken from documents and testimonial evidence adduced at trial. Citations to "Tr." refer to the transcript of trial.

[2] On July 11, 2017, after hearing argument from the parties, evidence that Solano transported drugs in 2014 and 2016 was admitted upon a motion *in limine* made by the Government. In accordance with Federal Rule of Evidence 404(b), the Court determined that both incidents constituted evidence of similar acts from which the jury could reasonably infer that Solano knew he was transporting narcotics in June 2016. Moreover, the 2014 incident put Solano "on notice that the type of conduct he was engaging in might be illegal." *United States v. Fofanah*, No. S1 11-CR-721, 2012 WL 2711279, at *2 (S.D.N.Y. July 9, 2012). As such, the Court found that the prior bad acts were offered for the proper purpose of proving Solano's "motive, . . . intent, preparation, plan, knowledge, . . . absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The prior bad acts were relevant to the primary issue in this case: whether Solano knowingly and intentionally conspired to distribute cocaine. At trial, to prevent any confusion or prejudice, the jury received an instruction that the "evidence concerning Mr. Solano's transportation of shipping containers in a time prior to the conduct charged in the indictment" was "not admitted as proof of the crime alleged in the indictment"; the evidence could be considered "only to the extent that it bears upon the defendant's knowledge or intent or lack of mistake to commit the acts charged in the indictment." (Tr. 221.)

warehouse in New Jersey. (Tr. 303–04, 316.) Once at the warehouse, Solano waited for approximately two hours before driving the container to a truck yard where he left it and then returned home. (Tr. 316.) On January 12, 2016, Solano again retrieved the container and then delivered it to a warehouse in the Bronx. (Tr. 317.) Subsequently, on January 26th and 27th of 2016, Task Force Officer Michael Corvi interviewed Solano about the container. (Tr. 304, 319–20.) During the interview, Solano maintained that he was unaware that the container contained narcotics. (*Id.*) Solano was not arrested. (Tr. 320, 501.)

## II. Facts Related to the Instant Offense

On June 1, 2016, CBP agents inspected a container at Red Hook Terminal in Brooklyn, New York, that, according to the manifest contained produce, such as sour oranges and peppers. (Tr. 48–49, 95.) The inspection of the container revealed that a white, powdery substance was hidden in the pallets used to hold the produce. (Tr. 36–38, 50–52.) The substance tested positive for cocaine, with a purity level ranging from 50–60%. (Tr. 37, 86–97.) In total, the cocaine weighed 13.59 kilograms. (Tr. 38, 41.)

CBP agents then placed an agricultural hold on the container and determined that they would conduct a "controlled delivery" of the cocaine.[3] (Tr. 100.) The agricultural hold was subsequently lifted, and on June 6, 2016, CBP agents began to surveil the container. (Tr. 101–02.)

On June 7, 2016, at 8:15 a.m., Solano received a call from Jimmy Machuca, an importer of "agriculture and seafood." (Tr. 133, 401, 516.) Machuca indicated that he wanted Solano to pick up a container from Red Hook Terminal and deliver it to a location in the Bronx. (Tr. 485–86.) At 8:40 a.m., Solano and Machuca began to exchange text messages regarding the pick-up

---

[3] When conducting a controlled delivery, agents will "return the commodity back to its original state and then put it back . . . in to effect for a potential violator to ultimately come and receive that commodity." (Tr. 101.)

3

and drop-off instructions for the container at Red Hook Terminal. (Tr. 133–34.) By 9:00 a.m., Solano had arrived at a Bronx warehouse to complete a separate delivery for Javier Montalvo, an administrative manager tasked with arranging container deliveries from Ecuador to the United States. (Tr. 133, 423, 485, 517.) While completing that delivery, Solano and Montalvo discussed the container at Red Hook Terminal. (Tr. 485–86, 518.) Among other things, Montalvo informed Solano that another driver had refused to pick up the Red Hook Terminal container because "something about it smelled bad." (Tr. 429–30, 487, 515, 549.) Montalvo also advised Solano to "[b]e careful with Machuca." (Tr. 549.) Solano testified that Montalvo's admonishment made him "suspicious." (Tr. 497.)

At 11:34 a.m., Solano received a text message from Machuca containing information concerning the pick-up and delivery of the container at Red Hook Terminal. (Tr. 134.) At 2:23 p.m., Solano entered Red Hook Terminal. (Tr. 62, 133–34.) Upon entering the terminal, he noticed surveillance vehicles and became concerned that he was doing "something bad." (Tr. 491.) At 2:29 p.m., Solano was photographed hitching the container to his truck. (Tr. 106–07.) At 2:35 p.m., Solano placed the first of three calls with Special Agent Dalrymple. (Tr. 135, 215, 520.) During the first call, Solano told Special Agent Dalrymple that he had not yet entered Red Hook Terminal and that he was concerned something was wrong with the container he was intending to pick up. (Tr. 229–31.) Before the call ended, he asked Special Agent Dalrymple to check on the container and let him know if it was okay to pick it up because he did not want to get into trouble for transporting another container. (Tr. 229.) By 2:47 p.m., Solano had loaded the container and exited Red Hook Terminal, driving towards the Bronx. (Tr. 63, 108, 136.) At 3:01 p.m., Solano had the second call with Special Agent Dalrymple. (Tr. 136, 140.) At the time of the second call, Solano was on or around the Manhattan Bridge. (Tr. 136, 140.) Solano

4

told Special Agent Dalrymple that he had nothing to do with the container. (Tr. 245.) The third call between Solano and Special Agent Dalrymple occurred at 3:11 p.m., at which time, Solano was in lower Manhattan. (Tr. 136, 141.) On the call, Special Agent Dalrymple told Solano that the container had been placed on an agricultural hold but was now okay to be picked up. (Tr. 246.) Solano then told Special Agent Dalrymple that a person from Ecuador named [Javier] told him to "be careful" with Machuca. (Tr. 247.) When Special Agent Dalrymple asked Solano what Javier meant by "be careful," Solano told him about a woman who was arrested for transporting heroin into the United States in liquor bottles; according to Solano, the heroin actually belonged to the woman's brother-in-law and the woman was unaware of the bottles' content. (Tr. 247.) At some point after the phone call, Solano arrived at the delivery location in the Bronx, where he was arrested. (Tr. 113.)

Upon his arrest, Solano was given *Miranda* warnings and underwent two interviews by agents of Homeland Security Investigations. Special Agent Lennis Barrois and Task Force Officer Corvi conducted the first interview. (Tr. 165, 190, 305, 323.) During the interview, Solano stated that Edwin Pacheco was supposed to pick up the container for Machuca, but did not do so because he was not feeling well. (Tr. 114, 305, 329.) Solano also indicated that he received a warning from Montalvo that Machuca was bad and the load was suspicious. (Tr. 115, 329.) Solano maintained that he understood Montalvo's statement to mean that Machuca wrote "bad checks." (Tr. 115.) Solano also stated that he did not know that the container contained drugs. (Tr. 191, 305.) Once Solano had completed his statement, Special Agent Barrois informed Solano that he did not believe Solano was being truthful. (Tr. 191.) Special Agent Barrois then ended the interview and placed Solano in a holding cell. (Tr. 116, 191, 305, 326.)

Subsequently, Supervising Special Agent Robert Etienne, Task Force Officer Corvi, and Special Agent John Malone conducted a second interview of Solano. (Tr. 305, 327, 355.) During this second interview, Solano again indicated that Pacheco was supposed to pick up the container. This time, however, Solano stated that Pacheco did not retrieve the container because Pacheco felt that something was "wrong," "suspicious," and "bad" about the container. (Tr. 356.) As in his first interview, he noted that Montalvo warned him to be careful because the container was bad. (Tr. 305–06, 328–29, 356.) However, unlike his first interview, Solano admitted that he knew there were drugs in the container when Montalvo told him to be careful. (Tr. 305–06, 328–29, 359.) Solano then admitted to previously transporting two other containers holding narcotics. (Tr. 306–08, 333–35, 362–65.) Solano indicated that, on each of these occasions, the narcotics were stored in the bottom of the box inside a false bottom. (Tr. 364–65.) In addition, Solano provided the agents with information concerning two drug importers. (Tr. 307–08, 333–35, 362–65.)

After Solano completed his statement, Supervising Special Agent Etienne brought Special Agent Barrois into the interview room. (Tr. 365.) Supervising Special Agent Etienne then summarized the statements Solano had made during the second interview. (Tr. 365.) Supervising Special Agent Etienne then directed Solano to "tell exactly the same thing over again" to Special Agent Barrois and Task Force Officer Corvi "so they could make sure everything is documented properly." (Tr. 366.) Supervising Special Agent Etienne then left the room. (Tr. 366.) Solano relayed a similar version of events to Special Agent Barrois. (Tr. 117–19, 195.)

## STANDARD OF REVIEW

### I. Rule 29 Motions

Under Rule 29, a district court, upon a defendant's motion, "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P 29(a). A defendant bringing a Rule 29 motion "bears a heavy burden, because a reviewing court must sustain the jury's guilty verdict if viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Heras*, 609 F.3d 101, 105 (2d Cir. 2010) (internal citations omitted) (emphasis in original). All inferences and all issues of credibility are to be drawn in favor of the jury's verdict. *See United States v. MacPherson*, 424 F.3d 183, 187 (2d Cir. 2005) ("Under this stern standard, a court, whether at the trial or appellate level, may not usurp the role of the jury, by substituting its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." (internal alterations and citations omitted)); *see also United States v. Young*, 745 F.2d 733, 762 (2d Cir. 1984) (noting that a "reviewing court must draw all available inferences, and resolve all issues of credibility, in favor of the jury's verdict"). Further, in making its determination, a district court must be mindful to view pieces of evidence, "not in isolation but in conjunction." *Young*, 745 F.2d at 762 (quoting *United States v. Carson*, 702 F.2d 351, 362 (2d Cir. 1983)). Essentially a judgment of acquittal is warranted only where "the evidence that the defendant committed the crime alleged is nonexistent or so meager that *no* reasonable jury could find guilt beyond a reasonable doubt." *Heras*, 609 F.3d at 105–06 (internal quotations omitted)(emphasis in original).

## II.    Rule 33 Motions

Pursuant to Rule 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Similar to a Rule 29 motion, the defendant carries the burden of showing that a new trial is warranted. *See United States v. Sasso*, 59 F.3d 341, 350 (2d Cir. 1995) ("It is the defendant who bears the burden of showing that a new trial is called for."). Unlike a motion premised upon Rule 29, a district court is not bound to the inferences made by the jury. It has broad discretion to "weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Anderson*, 689 F. App'x 53, 56 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 463 (2017) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992)). However, this discretion is not an open invitation to frequently disturb the province of the jury; Rule 33 is a high hurdle. *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) ("Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances.") (internal quotations omitted). The "test is whether it would be a manifest injustice to let the guilty verdict stand." *United States v. Guang*, 511 F.3d 110, 119 (2d Cir. 2007). That is, "[f]or a trial judge to grant a Rule 33 motion, [s]he must harbor a real concern that an innocent person may have been convicted." *Id.* (internal quotations omitted).

## DISCUSSION

## I.    Motion for Judgment of Acquittal

Solano asks this Court to enter a judgment of acquittal on Count Two of the indictment on the grounds that the Government failed to adduce sufficient evidence that he possessed the requisite *mens rea*—specific intent—to be found guilty of the crime of attempt to possess

cocaine with the intent to distribute (Mot. J. Acquittal at 5–8.) Specifically, Solano maintains that although the Government may have established that Solano had knowledge that the container held cocaine, the "the record is devoid of any testimony which supports a conclusion that [he] intended to distribute cocaine." (*Id.* at 6–8.) The Court disagrees.

To prove the attempt charge in this case, the Government had to establish beyond a reasonable doubt that Solano "(a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission." *United States v. Anderson*, 747 F.3d 51, 73 (2d Cir. 2014) (quoting *United States v. Farbane*, 634 F.3d 127, 145 (2d Cir. 2011)). In other words, with respect to the first element,[4] the Government had to show that Solano possessed cocaine with the intent that it be distributed. *See Heras*, 609 F.3d at 106 ("Thus, to convict [defendant] of conspiring or attempting to possess cocaine in violation of § 841(a)(1), the government was required to prove that he acted with the specific intent that the cocaine at issue be distributed.").

Courts have long recognized that the element of intent is often established through circumstantial evidence. *United States v. Salameh*, 152 F.3d 88, 143 (2d Cir. 1998) (noting "as a general rule [that] most evidence of intent is circumstantial"). Petitioner urges this court to find that the only circumstantial evidence purportedly supporting the intent element was Solano's admitted knowledge of the cocaine,[5] which he argues is insufficient as a matter of law to

---

[4] Solano does not move this Court with respect to the second element nor could he do so successfully. It is undisputed that he transported the container from Red Hook, Brooklyn to Hunts Point in the Bronx.

[5] It appears from the face of Solano's submission that he has conceded knowledge of the cocaine. However, even if he does not, the Government presented sufficient evidence that Solano knew the shipping container contained a controlled substance. *First*, multiple officers testified that Defendant Solano admitted to not only knowing there were drugs in the container when Montalvo warned him, but also to transporting drugs in the past. (Tr. 305–08, 328–29, 333–35, 359, 362–65.) *Second*, a reasonable jury could view Solano's behavior after he began to transport the container as that of one feigning innocence. He called Special Agent Dalrymple to receive clearance to transport the container, after having hitched it to his truck, and represented to Dalrymple that he had not yet arrived to Red Hook Terminal. And, importantly, he did not wait for Special Agent Dalrymple's permission to leave Red Hook Terminal. By the time he received the "okay," he was in Manhattan and headed to the delivery point. *Third*, in a

9

establish the requisite intent. (Mot. J. Acquittal at 5–8.) A review of the record belies Petitioner's argument. Contrary to his claim, the record provides ample—albeit circumstantial—evidence sufficient to establish intent.

*First*, as the Government correctly notes, the quantity of drugs found in Solano's possession was sufficient to infer the intent to distribute. That is, a jury is permitted to infer intent solely based on the quantity of drugs in a defendant's possession. *See United States v. Gaviria*, 740 F.2d 174, 185 (2d Cir. 1984) (noting that a jury could reasonably infer an intent to distribute given the quantity of cocaine—681 grams). Here, the cocaine found in the container weighed 13.59 kilograms. (Tr. 38, 41.) In addition, expert testimony established that such an amount of cocaine, could be divided into as many as 13,000 individual doses, a number consistent with distribution. (Tr. 87.) Solano did not elicit testimony challenging the expert's conclusion—nor could Solano reasonably have done so. This fact alone warrants the denial of Solano's motion. But, there was more.

In urging the court to enter a judgment in his favor, Solano directs the Court to *United States v. Heras*, 609 F.3d 101 (2d Cir. 2010), as "instructive as to what type of evidence is sufficient to establish specific intent." (Mot. J. Acquittal at 6.) *Heras* is indeed instructive. In *Heras*, the Second Circuit explained that "when a person possessing [] knowledge [of a criminal objective] agrees to facilitate or actually facilitates the crime, a jury may reasonably infer from this combination of knowledge and action that the defendant has adopted the known goal of the crime as his own." *Heras*, 609 F.3d at 107. Against this backdrop, the Second Circuit

---

call with Special Agent Dalrymple, Solano voluntarily made the self-serving statement that he wasn't involved with the container and shared a story he heard about a woman arrested for being an inadvertent drug courier. Moreover, his explanation for the latter may not have appeared plausible to the jury. Solano testified that he told Special Agent Dalrymple about the inadvertent drug carrier—a woman who was arrested after being "dupe[d]" into carrying heroin—because it was "more or less what was happening around that time." (Tr. 498–99.) He testified that it came up in conversation, but that he and Special Agent Dalrymple had not been discussing drugs. (Tr. 528–29.)

10

determined that the circumstantial evidence in the case supported a finding of intent. Among other things, the court noted that the defendant admitted that he knew he was traveling with a known drug dealer. *Id.* In addition, the court noted that the defendant traveled with the drug dealer from Manhattan to Queens to effect possession of the drugs. *Id.* The court highlighted that the situs of the drug transfer—near an international airport—suggested that the contraband at issue had recently been imported, which was "indicative of a drug quantity intended for distribution rather than personal use." *Id.* On this record, the Second Circuit vacated the judgment of acquittal and ordered the district court to reinstate the jury verdict on the attempted possession of cocaine with the intent to distribute charge.

Similar evidence was adduced at the trial in this case. As previously discussed, Solano has effectively conceded in his motion that he was travelling with the drugs. (*Supra* at 9.) Even if he had not made this concession, evidence adduced at trial would allow any reasonable juror to so conclude. According to the testimony of Supervising Special Agent Etienne and Special Agent Barrois, during Solano's second interview he admitted that he knew the Red Hook Terminal container held drugs. (Tr. 117–19, 195, 305–06, 328–29, 359.) Significantly, this is the very same container that he agreed to pick up from Brooklyn and did *deliver* to the Bronx for Machuca—a person of whom he had been warned. (Tr. 115, 305–06, 328–29, 356.) Moreover, the pick-up site—a shipping terminal for international cargo—most certainly suggests that the drugs were intended for distribution. This is not "mere knowledge" as the Petitioner would urge. No. Instead, this evidence coupled with other circumstantial evidence adduced at trial, was sufficient to establish intent.[6]

---

[6] Solano's argument that the Government did not find a witness to testify that he told Solano about the container holding narcotics, and did not proffer proof that Solano communicated with the ultimate owner of the cocaine does nothing to undermine this conclusion. Solano need not have known of all of the details of the criminal plan to be

11

Accordingly, the Government has offered sufficient evidence to establish that Defendant Solano had the requisite criminal intent, and the jury's verdict was not against the weight of the evidence.

## II. Motion to Set Aside the Jury's Verdict and Order a New Trial

Solano asks this Court to set aside the jury's verdict and order a new trial, in part, because the evidence "was insufficient to show that Mr. Solano intentionally transported what he thought to be a controlled substance on June 7, 2017." (Mot. J. Acquittal at 9.) In response, the Government contends that Solano's Rule 33 argument is duplicative of his Rule 29 argument; and, as such, it should be denied. The Court agrees. As detailed above, the record is replete with evidence supporting the jury's finding that Solano intentionally transported what he thought to be a controlled substance on June 7, 2017. As such, this argument presents no genuine basis upon which the Court can find that "manifest injustice" will occur in the absence of a new trial. *See e.g.*, *United States v. Amanor*, No. 15-CR-79, 2015 WL 13344077, at *3 (E.D.N.Y. Sept. 29, 2015), *aff'd*, 684 F. App'x 2 (2d Cir. 2017) (denying Rule 33 motion where defendant simply reiterated sufficiency of the evidence arguments that were unsuccessfully raised in the Rule 29 motion); *United States v. Fama*, 979 F. Supp. 2d 338, 342–43 (E.D.N.Y. 2013) (same); *United States v. Sehgal*, No. 05-CR-00688, 2008 WL 11336146, at *2 (E.D.N.Y. Nov. 20, 2008) (same); *United States v. Rodriguez*, No. 05-CR-630, 2007 WL 2908246, at *3 (E.D.N.Y. Oct. 5, 2007) (same).

In addition, Solano asserts that his decision not to plead guilty to a lesser included offense is also a viable basis for the Court to grant his request for a new trial. (Mot. J. Acquittal at 10.) This argument is bunk. The Court will not infer innocence from Solano's knowing and

---

found guilty of the crime. *See Heras*, 609 F.3d at 108 (noting that defendant did not need to know the particulars of the drug distribution plan for a guilty verdict to be sustained).

voluntary decision to not plead guilty to a lesser included offense.  Undoubtedly, there are numerous considerations that inform a defendant's decision whether or not to enter a plea of guilty to a crime to which he is charged.  A finding that Solano's rejection of the plea offer is a sufficient basis for a new trial would effectively nullify the high standard required to satisfy Rule 33.  In an overwhelming number of criminal cases where the defendant is found guilty, the defendant, at some point in time, rejected a plea agreement.  It defies logic to conclude that in each of those instances, a new trial is warranted.  There is simply nothing "extraordinary" about a convicted defendant having first rejected the Government's plea deal.

Accordingly, seeing no substantiated reason to usurp the role of the jury, Defendant Solano's Rule 33 motion is denied.  *See Ferguson*, 246 F.3d at 133 ("The district court must strike a balance between weighing the evidence and credibility of witnesses and not 'wholly usurp[ing]' the role of the jury.") (quoting *United States v. Autori*, 212 F.3d 105, 120 (2d Cir. 2000) (alterations original)).

## CONCLUSION

For the reasons set forth above, Defendant Solano's motion for a judgment of acquittal, or in the alternative, a new trial is denied.

Dated: Brooklyn, New York  　　　　　　　　　　SO ORDERED:
　　　　September 5, 2018
　　　　　　　　　　　　　　　　　　　　　　　　　／s／LDH
　　　　　　　　　　　　　　　　　　　　　LaSHANN DeARCY HALL
　　　　　　　　　　　　　　　　　　　　　United States District Judge